UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Angela Rose Steward,

                        Plaintiff,

                        **Report and Recommendation**

          v.                      16-CV-709V

Nancy A. Berryhill,
*Acting Commissioner of Social Security*,

                        Defendant.

---

I.       INTRODUCTION

District Judge Lawrence J. Vilardo has referred this case to this Court under 28 U.S.C. § 636(b).  (Dkt. No. 6.)  Pending before the Court are cross-motions for judgment on the pleadings by plaintiff Angela Rose Steward ("Steward") and by defendant the Commissioner of Social Security (the "Commissioner"), under Rule 12(c) of the Federal Rules of Civil Procedure ("FRCP").  (Dkt. Nos. 16, 17.)  In short, Steward contends that the Commissioner overlooked clinical evidence that she was unable to sit for more than twenty minutes without serious pain or discomfort, even with Lortab medication, various forms of physical therapy, and home care treatment.  Steward also argues that the Commissioner improperly diminished the assessment of two treatment providers, mostly on the basis that they formed retroactive opinions about the time when they treated her.  The Commissioner defends the denial of benefits by noting that the denial followed a full consideration of alleged physical complaints, including back and neck pain, chronic fatigue, obesity, sensitivity to environmental scents, and muscle atrophy.  According to the

Commissioner, the denial was consistent with the available medical evidence and with the consideration of work capacity that occurred at the hearing. The Commissioner rejects Steward's arguments as relying too much on subjective complaints not supported by the clinical record. The Commissioner further defends the rejection of the two treatment providers, not only because their opinions were retroactive, but also because the extensive record that was developed contradicted the very general statements in their opinions and rendered further development unnecessary.

The Court has deemed the motions submitted on papers under FRCP 78(b). For the reasons below, the Court respectfully recommends granting Steward's motion in part to remand the matter for further proceedings.

## II.   BACKGROUND

### A.   *Medical and Factual Background*

Steward filed her application for Title II Disability Insurance Benefits on March 25, 2013, claiming a date of disability onset of January 1, 2005. (Dkt. No. 8, Certified Administrative Record at 166, hereinafter cited as [166].) Steward listed the following medical or other health providers with her application: Margaret R. Mitchell, M.D. (2000–11); William J. Wnuk, M.D. (2004–12); Cynthia Ceier, D.C. (2013); and Ken Osborn, P.A. (2007–12). [202, 203, 219–20.]

The administrative record contains medical records from Bertrand Chaffee Hospital. On June 30, 2009, a physical therapist assessed Steward as having decreased strength and functional ability due to lumbar and back problems. [245.] A follow-up note dated April 2, 2010 described Steward as reporting pain as a four out of a 10-point scale. [251.] On April 5, 2010, Steward reported an increase in pain following a long drive over a holiday weekend. [253.] As of

November 29, 2010, Steward had experiences of thoracic pain radiating into her left shoulder and arm. [255.]

The administrative record contains medical records from Dr. Wnuk's office. On June 4, 2007, Steward was found with liver and adrenal lesions. [267.] On April 8, 2007, Steward experienced a motor vehicle accident and had x-rays taken at Wyoming County Community Hospital. The x-rays found no fractures but severe narrowing of cervical disc spaces. [277.] A colonoscopy and colon biopsy on December 11, 2006 uncovered some signs of active ileitis. [279, 280.] A CT scan of the chest on February 16, 2006 uncovered a stable long lesion with no other remarkable signs. [288.] On June 17, 2009, Steward was found with lower back pain and left leg radiculopathy pain related to the motor vehicle accident. [299.] Lumbago with degenerative disc disease appears in an assessment of December 7, 2009. [301.] Steward's back and neck pain improved somewhat as of January 12, 2010, but she still needed Lortab medication. [303.] At the same exam, Steward presented with hyperlipidemia that was "unacceptable," but she preferred to pursue alternative therapies and not medication. [303.] Steward continued to experience neck, thoracic, and back pain as of February 21, 2011, but physical therapy helped somewhat. [312.] An echocardiogram on May 5, 2011 turned up normal. [319.] On April 4, 2011, Steward presented with some signs of low bone density. [338.] On October 24, 2013, Steward was diagnosed with myalgia, knee and hip pain, and Crohn's disease. [375.] These symptoms and fatigue continued through 2015 and into 2016. [427.]

The administrative record contains medical records from Dr. Ceier's office. An MRI dated April 21, 2009 found Steward with degenerative disc disease, arthritis, and some narrowing. [466.]

3

An examination dated April 27, 2009 reached similar conclusions. [471.] Degenerative changes and foraminal narrowing were noted in an MRI report dated January 25, 2011. [479.] The degenerative changes worsened somewhat by the time of an MRI report dated January 27, 2015. [503.] The most significant item in Dr. Ceier's records—one that drew the attention of the Commissioner during agency proceedings and has drawn the attention of the parties now—is a letter that Dr. Ceier signed on April 30, 2015. [506.] The letter reads in its entirety as follows:

> To Whom It May Concern:
>
> I have been Angela Steward's treating chiropractor since 2007, after she was involved in a motor vehicle accident. I have treated her for neck pain, low back pain, and radicular symptoms since that time.
>
> Ms. Steward has consistently presented with significant pain, which has not responded to various treatment modalities. Chiropractic adjustments have only provided temporary relief.
>
> The nature of Ms. Steward's spinal pathology is fully documented by diagnostic testing done on her spine. Based upon that pathology, my examinations of Ms. Steward, and her response and lack thereof to treatment that has been attempted, it is my opinion that she has the following limitations:
>
> 1. She is unable to stand more than 15–30 minutes at one time, and cannot walk more than 10–15 minutes at one time. She cannot walk and stand, combined, more than two hours out of an eight hour workday.
>
> 2. She can sit approximately 20 minutes, and could not sit more than four hours out of an eight hour workday.
>
> 3. She can lift approximately 10 pounds.
>
> Ms. Steward's spine condition causes her to have occasional flare-ups of significant pain. It is my opinion that these flare-ups would cause her to miss at least three days per month of work if she were to attempt to engage in employment.
>
> It is my opinion that Ms. Steward has been limited as stated above since her motor vehicle accident of April 8, 2007. It is further my opinion that the limitations listed above are consistent with and caused by the objective medical findings of records, as shown on the diagnostic tests that have been performed on her spine.

[506.]

The administrative record contains a second letter that has drawn the parties' attention, from Dr. Mitchell. Dr. Mitchell's letter, dated April 28, 2015, reads in its entirety as follows:

To Whom It May Concern:

Angela Steward was a patient to mine [sic] from June 2009 through August 2012. For the entire time I cared for her she was extremely ill with fibromyalgia, including much pain and severe fatigue. There were days when she could not get out of bed other than for hygiene. Cooking a meal was extremely difficult. She was also found to have adrenal insufficiency. For these conditions she was treated with a combination of nutraceuticals and dietary intervention. She did respond to treatment however was never able ro recover to the point of being able to function normally for more than 1 to 3 days weekly.

At the time I last treated Ms. Steward she continued to require 1 or 2 naps daily. She also continued with much pain. She was unable to work steadily more than two hours daily, and could not function more than one hour at a time. She was unable to lift more than 5#, and not repeatedly. She was unable to work in a stressful environment. When I last saw Ms Steward she was still completely disabled and unable to work, and barely able to manage herself at home.

[437.]

B.   *Procedural Background*

As the Court mentioned above, Steward filed her initial application on March 25, 2013. The Commissioner denied the initial application on June 25, 2013. [91.] On August 21, 2013, Steward requested a hearing by an Administrative Law Judge ("ALJ"). [91–92.]

The hearing occurred in two sessions, on March 2 and May 6, 2015. [25, 74.] At the second session, Steward amended her alleged onset date to April 8, 2007, the date of the motor vehicle accident that she suffered. [41.] Steward testified along with Vocational Expert ("VE") David Festa. Among other information, Steward testified that she worked part-time for the Springville School District. [36.] Steward worked once a year as an inspector for the Erie County Board of Elections. [39.] As for symptoms, Steward described the pain that she experienced in her

lower back, including how the pain rated between a five and a seven and has worsened over time. [42–44.] Steward made reference to pain in her arms, migraines, and blurred vision. [45.] Steward also mentioned her neck pain and how she could stand in one place for no more than 15 to 30 minutes at a time. [46.] Steward testified that she could lift no more than about 10 pounds before experiencing significant pain. [49.] Steward described her energy level and how chronic fatigue affected it. [51, 54–55.] Steward testified that she would need about 30 minutes to walk six houses down the road in her rural neighborhood. [60.] Steward's testimony included details about her use of Lortab and other medications or supplements, along with details of her physical therapy and her occasional trouble getting dressed. [63–64.] Steward also described limitations to household chores and daily activities. [66–67.] Steward explained to the ALJ how she cannot be around computers, smart phones, or other electronic devices because they cause her migraine headaches and aggravate her chronic fatigue symptoms. [68–69.]

The VE also testified at the hearing. The VE began with his assessment of Steward's relevant past work:

> A. Okay. The first job was a clerk typist; DOT 203.862-010.
>
> Q. Okay.
>
> A. SVP is 4; it's considered semiskilled and is exertional level and customarily performed at sedentary.
>
> The last job that was discussed, I would describe it as an administrative assistant; DOT 169.167-010; the SVP is 7; considered skilled; exertional level and customarily performedsedentary.

[73.] The VE then addressed a hypothetical about possible present conditions and how they might match up with Steward's past work:

> Assume an individual the same age, education, and work experience as the claimant; assume that this individual is limited to a range of sedentary work

>   activities; occasional ramps, stairs, or balance; occasional kneel, crouch, and crawl; no ladders, ropes, scaffolds; occasional bending.
>
>   Would that hypothetical individual be able to perform any of the past work?
>
>   A. I would say yes, Your Honor.
>
>   Q. Which of the—
>
>   A. Both. Could do both.

[73.] The ALJ then modified the above hypothetical:

>   Q. If our hypothetical individual was limited to no more than standing and walking of, up to two hours per day and sitting up to four hours per day, would that hypothetical individual be able to perform past work and/or other jobs in the national economy?
>
>   A. I'd say no past relevant work and no jobs on a fulltime, consistent basis.

[74.] Steward's counsel added one more modification of the hypothetical:

>   Q. So if you had to take more than a half an hour of naps per day, that would affect a large number of jobs, and if it was more than an hour a day, it would eliminate all jobs? Would that be a fair statement?
>
>   A. I think that's a fair statement.

[75.]

The ALJ issued an unfavorable decision on July 21, 2015. The ALJ found that Steward had several severe impairments through her date last insured: discogenic and degenerative disease of the lumbar, thoracic and cervical spine. [17.] The ALJ nonetheless found that Steward had no impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [18.] Among other parts of the analysis, the ALJ determined that "[p]hysical examination on June 17, 2009 revealed intact dermatome reflexes and intact strength in the lower extremities (Exhibit 2F, 33). Physical examination from January 12, 2010, showed no neurological deficits, with movement in all four extremities and intact dermatome reflexes (Exhibit 2F, 39)." [18.] The ALJ next considered Steward's residual functional

capacity ("RFC") and determined that she could "perform sedentary work as defined in 20 CFR 404.1567(a) with occasional climbing of ramps or stairs, occasional balance and occasional kneeling, crouching or crawling. The claimant could not climb ladders, ropes or scaffolds and could occasionally perform bending." [18.] The ALJ based this determination on medical records suggesting improvement in Steward's condition. The ALJ also discounted Steward's hearing testimony:

> For instance, the claimant testified that she could not sit for more than 20 minutes and sometimes could only sit for even less than 20 minutes. However, she drove one hour to travel to the hearing location on May 6, 2015. The claimant also reported in documentary evidence and during testimony that she is unable to be around laptops and android cell phones, as they "essentially shut her down" (Exhibit 3E, 7 and hearing testimony). There is no medical evidence to support these allegations. The claimant also testified that she performs a full day of work as an election official from 5:30 AM to 9:30 PM, 16 hours, with two one-hour offsite breaks, which I find incompatible with the severity of complaints alleged.

[22.] With respect to the letters from Dr. Ceier and Dr. Mitchell, the ALJ discussed them at length but discounted them as follows:

> Recently dated medical statements from treating sources, submitted after the initial hearing, attempt to connect what appear to be the claimant's current complaints back to before the datelast insured of December 31, 2009.
>
> For instance, the record contains a medical statement from the claimant's treating chiropractor. One, submitted on April 29, 2015, is undated and unsigned (Exhibit 7F). The other, an exact duplicate of the first, was signed on April 30, 2015 (Exhibits BF and 15F, 55). The treating chiropractor reported that chiropractic adjustments had only provided temporary relief to the claimant's significant neck pain, low back pain and radicular symptoms, since 2007. She opined that the claimant is unable to stand no more than 15–30 minutes at one time and unable to walk more than 10–15 minutes at one time. She further reported that the claimant could not walk and stand, combined, for more than two hours in an eight hour workday and that she could sit only approximately 20 minutes, but not more than four hours in an eight hour workday. The treating chiropractor stated that the claimant could lift approximately 10 pounds. Finally, she stated that the claimant would miss at least three days per month of work, because of flare-ups of significant pain (Exhibits 7F, 13F and 15F, 55).

8

>	I have given little weight to this assessment, as to the issue of any severe impairment that existed prior to the date last insured. I note initially that a chiropractor is not an acceptable medical source according to Social Security's rules and regulations (20 CFR 416.913 (a)). Secondly the report is authored over five years after the period in question. Even assuming that the records filed contemporaneously with the assessment forms are from this specific chiropractor, the treatment records are cryptic and not supportive of disability. For instance, the only entry entered for treatment notes dated May 5, 2009 under the heading of "objective" findings, is "severe LBP", which is not an objective finding (Exhibit l5F, 23).
>
>	In addition, a treating physician submitted a letter dated April 28, 2015, stating that she had treated the claimant from June 2009 through August 2012, during which the claimant "was extremely ill with fibromyalgia, including much pain and severe fatigue" (Exhibit 12F, 1). The physician further stated that the claimant responded to nutraceuticals and dietary intervention, but she was never able to recover to the point of being able to function normally for more than 1 to 3 days weekly. She also reported that the claimant was unable to work steadily more than two hours daily and could not function more than one hour at a time. The physician also stated that the claimant was unable to lift more than 5 pounds and unable to work in a stressful environment, rendering her "completely disabled and unable to work" (Exhibit 12F, 1).
>
>	I have given little weight to this opinion as to the issue of the claimant having a medically diagnosed severe impairment prior to the date last insured. I note initially that the report was authored over five years after the period in question. It further contains no reference to contemporaneous signs, clinical findings or diagnostic findings to support the conclusions reached (Exhibit 12F). In particular, reference is made to SSR12-2p and the lack of any evidence prior to the date last insured to support any fibromyalgia diagnosis in accordance with that ruling or otherwise.

[21.]

Following the ALJ's determination, Steward exhausted her administrative remedies by seeking review by the Appeals Council on September 17, 2015. [9.] The Appeals Council upheld the ALJ's determination on July 11, 2016. [5.]

Steward commenced this case by filing her complaint on September 6, 2016. (Dkt. No. 1.) Steward filed her motion for judgment on the pleadings on May 1, 2017. (Dkt. No. 16.) Steward argues that the ALJ's RFC determination is incorrect because "medical evidence and other

evidence in the record shows Plaintiff was unable to sit for more than twenty minutes without serious pain or discomfort afterwards, evenwith Lortab, therapy, chiropractor, TENs unit and home care treatment." (Dkt. No. 16-1 at 18.) Steward argues further that the ALJ ignored her fibromyalgia or other chronic fatigue symptoms, asserting that the "record is replete with medical and other evidence Plaintiff had disorders and abnormalities, chronic symptoms, and limitations, both before and after the date of last insured." (*Id.* at 19.) Steward believes that the ALJ put too much weight on the evidence "that Plaintiff had once a year participated in election work with two one hour breaks, and was able to drive an hour to hearing, [and] shop with assistance." (*Id.* at 20.) In Steward's view, "the ALJ's error is significantly harmful to Plaintiff as the vocational expert testified that if Plaintiff was limited to standing and walking up to two hours out of day and sitting up to four hours per day; or more than one unexcused absence per month; or off-task more than 5% of [the] day; or required breaks for more than a half an hour plus adopted RFC [*sic*] then there would be no past relevant work and no jobs on a full-time basis." (*Id.* at 21.) With respect to the letters from Dr. Ceier and Dr. Mitchell, Steward argues that "[c]ourts have found an ALJ rejection of retrospective report by a post-date-last insured treating doctor was an error as violation of the principle that an ALJ may not substitute his own judgment over competent medical opinions, and contrary to case law." (*Id.* at 23.) According to Steward, if information from Dr. Ceier and Dr. Mitchell were to receive appropriate attention then remand would be necessary, at a minimum, because

> [B]oth treated Plaintiff prior to Plaintiff's last insured date, and specifically noted limitations reverted and existed during period at issue. (Tr. 433–434, 502). Therefore, the ALJ erred when he rejected opinions because they were five years after the period. (Tr. 17–18, 433–434). Dr. Ceier treated Plaintiff over seventy one times since 2007 and had a longitudinal relationship and chiropractic expertise

10

>from which to base her opinion. (Tr. 449–502). Dr. Mitchell treated Plaintiff from 2009 to 2012 for fibromyalgia, adrenal insufficiency and food sensitivities and had a longitudinal relationship from which to base her opinion.

(*Id.* at 24; *see also* Dkt. No. 18 at 3 ("In this case, Plaintiff reported improvement at times, but still had persistent pain and fatigue, numbness, tingling, restricted motion, muscle hypertrophy and chronic symptoms that contradicted competitive work.").)

The Commissioner filed a cross-motion on July 28, 2017. (Dkt. No. 17.) The Commissioner argues that the ALJ did in fact consider available clinical evidence and did note that the evidence indicated some improvement. (*Id.* at 12.) In the Commissioner's view, evidence that the ALJ ignored or discounted was subjective evidence from Steward's own testimony. (*Id.*) The Commissioner points out that Steward's assertions about electronic devices were not substantiated by clinical evidence, while other assertions about sitting and standing limits were contradicted by information in Steward's travel and work history. (*Id.* at 13.) With respect to the letter from Dr. Mitchell, "[o]ffice treatment records from Health Transformations during the six months of the relevant period that Dr. Mitchell treated Plaintiff neither mention fibromyalgia and severe fatigue, nor indicate Plaintiff's 'completely disabled' status as discussed in the letter. (Tr. 339–346). For fibromyalgia specifically, the lack of any evidence prior to the date last insured to support this diagnosis warrants a discounting of the claim in accordance with the standards set in SSR 12-2p." (*Id.* at 15.) The Commissioner similarly defends the ALJ's treatment of the letter from Dr. Ceier:

>In evaluating chiropractor Ceier's statement, the ALJ properly gave "little weight" to the assessment first because a chiropractor is not an acceptable medical source according to Social Security's rules and regulations. (Tr. 17). *See* 20 C.F.R. § 404.1513(d)(1). Only acceptable medical sources can be considered treating sources whose medical opinions may be entitled to controlling weight. SSR 06-3p.

11

> Chiropractors and therapists are non-acceptable medical sources whose opinions may be considered, but need not be assigned controlling weight. 20 C.F.R. § 404.1513(d)(1).
>
> In evaluating the chiropractor's form, the ALJ noted that Chiropractor Ceier authored the report over five years after the relevant period. (Tr. 17). The ALJ additionally observed that even if the opinion had been authored contemporaneously, the actual treatment records during the relevant period were nonetheless "cryptic and not supportive of disability." (Tr. 17). For instance, treatment notes dated April 27, 2009, under the heading of "objective" findings notes "has more energy" and the only entry in treatment notes dated May 5, 2009 under the heading of "objective" findings" is "severe LBP," both of which are not objective findings but merely recitations of Plaintiff's subjective complaints. (Tr. 463 and 470).

(*Id.* at 16–17.)

## III. DISCUSSION

### A. *Standard of Review Generally*

The ultimate issue to be determined by this Court is whether the ALJ's decision that Steward was not under a disability is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

For purposes of Social Security disability insurance benefits, a person is disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d) (2)(A) & 1382c(a)(3)(B).

Steward bears the initial burden of showing that her impairments prevent her from returning to her previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing her past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing her past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, *supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing her past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that she has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to her past relevant work given her residual functional capacity. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

### B. *The ALJ's RFC Determination*

The Court turns first to Steward's argument about the evidence supporting the ALJ's determination of her residual functional capacity. Based on the hypothetical presented to the VE, Steward would be able to return to past work as long as she were capable of "a range of sedentary work activities; occasional ramps, stairs, or balance; occasional kneel, crouch, and crawl; no ladders, ropes, scaffolds; [and] occasional bending." [73.] The available medical records acknowledge that Stewart had lower back pain, mechanical neck pain, and a regular prescription for pain medication. [*See, e.g.,* 301.] The records also acknowledge other conditions such as hyperlipidemia, Crohn's disease, and an adrenal mass. [303, 375, 427.] On their faces, though, these medical records do not contradict the limitations built into the hypothetical presented to the VE. *See, e.g., Yurdakul v. Comm'r of Soc. Sec.*, 907 F. Supp. 2d 363, 367 (W.D.N.Y. 2012); *Potter v.*

14

*Comm'r of Soc. Sec.*, No. 08-CV-6568L, 2010 WL 11507548, at *3 (W.D.N.Y. Nov. 1, 2010), *aff'd sub nom. Potter v. Costello*, 477 F. App'x 851 (2d Cir. 2012) (summary order).  In contrast, the information in the record detailing Steward's most severe limitations comes from her own testimony or from the subjective testimony of family.  The ALJ was not wrong to point out concerns about Steward's credibility; the record indicated some ability to sit for longer periods of time than Steward suggested at the hearing, and the testimony about electronic devices was not supported clinically.  *Cf. Colter v. Colvin*, 554 F. App'x 594, 596 (9th Cir. 2014) (unpublished decision) ("The ALJ found Colter's testimony of allergic reactions to chemicals and electromagnetic fields unsupported by several tests revealing no allergies.").  Based on the documentation available in the record so far, substantial evidence supports the ALJ's RFC finding regardless of what the Court might have determined in the first instance.

        C.     *Letters from Drs. Ceier and Mitchell*

Next, the Court will consider the ALJ's treatment of the letters submitted by Drs. Ceier and Mitchell.  As an initial matter, Steward has not refuted the Commissioner's contention that Dr. Ceier is not an "acceptable medical source" as defined in 20 C.F.R. § 404.1502(a).  Steward has argued instead that "such opinions are nevertheless important and should be evaluated on key issues such as impairment severity and functional effects." (Dkt. No. 16-1 at 23 (internal quotation marks and citations omitted).)  The Court's more serious concern, though, is what to do about the apparently retroactive nature of the letters.  Steward acknowledges that the letters are retroactive, focusing instead on arguing that the ALJ should have done more to resolve any inconsistencies in the record.  (Dkt. No. 16-1 at 23–24; Dkt. No. 18 at 7.)  Retroactive medical opinions do not receive as much weight as contemporaneous ones, though they can be considered if they clarify the

time frame and the clinical findings on which they rest. *See, e.g., Dousewicz v. Harris*, 646 F.2d 771, 774 (2d Cir. 1981); *accord Jones v. Heckler*, 614 F. Supp. 277, 280 (D. Vt. 1985) (citations omitted). This is where the ALJ's decision, respectfully, runs into trouble. The letters do not provide precise treatment dates or ranges of treatment dates that Drs. Ceier and Mitchell considered. Drs. Ceier and Mitchell should have known better; nonetheless, "Dr. Ceier treated Plaintiff over seventy one times since 2007 and had a longitudinal relationship and chiropractic expertise from which to base her opinion. (Tr. 449-502). Dr. Mitchell treated Plaintiff from 2009 to 2012 for fibromyalgia, adrenal insufficiency and food sensitivities and had a longitudinal relationship from which to base her opinion. (Tr. 339-346, 433)." (Dkt. No. 16-1 at 24.) The letters hint at contemporaneous, objective clinical findings but do not specify what those findings were. The record contains no clinical notes at all from Dr. Mitchell. Given the ALJ's obligation to develop the record, the ALJ at a minimum should have given Steward some opportunity to supplement the letters with whatever clinical findings might have been made back at the relevant times. *Cf. Cook v. Apfel*, 1 F. App'x 13, 15 (2d Cir. 2001) (summary order); *Wiebicke v. Astrue*, No. 10 CIV. 3371 BSJ FM, 2012 WL 2861681, at *17 (S.D.N.Y. July 2, 2012) ("To discharge his duty to develop the record, the ALJ should have sought clarification from Dr. Fond as to whether his 2008 and 2009 impressions applied to the period at issue.") (citation omitted). Regardless of what additional efforts Steward could have taken to draw greater attention to her relationships with Drs. Ceier and Mitchell, the apparent duration of each relationship is too long to ignore with an assertion that "the ALJ properly rendered a decision based on a 541-page record that failed to establish Plaintiff's disability." (Dkt. No. 17 at 16.)

Under these circumstances, remand is appropriate to develop more of a record regarding the clinical basis for the medical opinions in the letters from Drs. Ceier and Mitchell. Steward is encouraged to assist this process as much as she can. The Court takes no opinion at this time about the ultimate merits of any issues that Steward has raised in connection with the letters. Steward is cautioned, though, that Dr. Mitchell's conclusion that Steward was "completely disabled" is a legal conclusion reserved for the Commissioner. *See, e.g., Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("Moreover, some kinds of findings—including the ultimate finding of whether a claimant is disabled and cannot work—are "reserved to the Commissioner." *Id.* § 404.1527(e)(1). That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability. A treating physician's statement that the claimant is disabled cannot itself be determinative.").

## IV. CONCLUSION

For all of the foregoing reasons, the Court respectfully recommends granting Steward's motion (Dkt. No. 16) in part to vacate the Commissioner's final determination and to remand the case for further proceedings. The Court recommends denying Steward's motion without prejudice in all other respects. The Court also recommends denying the Commissioner's motion (Dkt. No. 17) in its entirety but without prejudice.

## V. OBJECTIONS

A copy of this Report and Recommendation will be sent to counsel for the parties by electronic filing on the date below. Any objections to this Report and Recommendation must be electronically filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. § 636(b)(1); FRCP 72. "As a rule, a party's failure to object to any purported error or omission in a magistrate judge's

report waives further judicial review of the point." *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (citations omitted).

    SO ORDERED.

                                      __/s Hugh B. Scott_____
                                      Honorable Hugh B. Scott
                                      United States Magistrate Judge

DATED: April 6, 2018